**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-42-RJC**

| | | |
|---|---|---|
| JEREL DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DUANE TERRELL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on consideration of Respondent's motion for summary judgment on the claims presented by Petitioner in his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons that follow, Respondent's motion for summary judgment will be granted and Petitioner's Section 2254 petition will be denied and dismissed.

**I.   BACKGROUND**

Petitioner is a prisoner of the State of North Carolina following his conviction on January 27, 2010, by a Mecklenburg County jury on one count of robbery with a dangerous weapon, and one count of conspiracy to commit robbery. The court sentenced Petitioner to a term of 103 to 133 months of imprisonment and he appealed. The North Carolina Court of Appeals summarized the evidence presented at trial:

> The fingerprints of Jerel Davis ("Defendant") were discovered on a vehicle in the parking lot of a pawn shop shortly after the robbery of the pawn shop. At trial, Defendant requested a jury instruction on fingerprint evidence. A Ten Most Wanted List, containing information on the last known whereabouts of Defendant and a photograph of Defendant, was admitted at trial without

1

objection. On appeal, we must determine whether the trial court erred by failing, upon written request by Defendant, to instruct the jury on the probative value of fingerprint evidence, and whether the trial court committed plain error by allowing the admission of the Ten Most Wanted List. We conclude the trial court did not err.

The evidence of record tends to show that on 27 May 2006, at approximately 6:45 p.m., Daniel Lattimore ("Lattimore"), the assistant manager of Cash America Pawn located on Wilkinson Boulevard in Charlotte, North Carolina, stepped outside the store to smoke a cigarette. Two men walked toward Lattimore and told him to go back into the store. One man's face was covered with a ski mask, and the other, with a red shirt. The man wearing the ski mask carried a gun in the waistband of his pants, and he pointed the gun at Lattimore. At the behest of the men, Lattimore unlocked the front door of the store, and the men entered, forcing Lattimore to the front counter, directing him to lie down on the floor, and taking his cell phone, car keys, and shirt. The men then directed Lattimore to the processing room of the pawn shop, where the jewelry was stacked and prepared to go into the vault. The men took the jewelry and dumped it into a duffle bag. The man wearing the red shirt also took the money from the drawer of the front counter and put it in his pocket. The men then went into the manager's office to take money from the manager's desk. Lastly, the men took a laptop from the vault.

After the men had gathered the jewelry, money and laptop, they directed Lattimore to lie down on the floor a second time, while the men exited the store. Lattimore believed they were unloading the stolen goods into his car. The men then came back into the store and said, "the money was acting funny." After their confusion regarding the money, the man wearing the ski mask stood over Lattimore with a gun, while the second man exited and entered the store a number of times.

Both men then left the store, and Lattimore turned on a secondary surveillance monitor, hit the panic button, and dialed 911. Lattimore also reported to the police that his car had been stolen because he thought the men had taken his car.

Officer Brett Michael Riggs arrived at Cash America Pawn after Lattimore's call. Officer Riggs noticed there was one vehicle in the parking lot B a burgundy Oldsmobile Bravada. Officer Riggs did not see anyone in the parking lot or around the building. When questioned by Officer Riggs, Lattimore described the perpetrators

of the offense: One man was "approximately 6, 2, slim in build[,] black male[,] . . . wearing dark-colored pants, red shirt, and had a second red shirt covering his face[;]" the other man was "[a]pproximately 6, 6, slim in build as well[,] [w]earing dark pants[,] black hooded sweatshirt with a ski mask on and armed with a black pistol."[1]

Lattimore told Officer Riggs he thought the men had stolen his car because they took his car keys; however, Officer Riggs explained there was a burgundy Bravada in the parking lot. Lattimore walked outside with Officer Riggs to confirm that the vehicle in the parking lot was his vehicle, and Officer Riggs noticed that "the interior was filled with [pink] . . . smoke" and that the vehicle was running. Officer Riggs also noticed "some currency . . . stained with a pink color" in the back seat of the vehicle. Lattimore told Officer Riggs that the suspect had taken a dye pack from the business. A photograph from the surveillance monitor shows one man "reaching into the till and pulling out the dye pack" during the course of the robbery, and this photograph was admitted as evidence at trial.

On 27 May 2006, the same day as the robbery, Crime Scene Search Technician Angela Flanders ("Officer Flanders") took latent fingerprints from the exterior left front door and the exterior left front window of Lattimore's vehicle. Flanders testified that the prints belonged to Defendant.

Jawquetta Nasandra Walker, an employee of Pawn Mart, contacted the police in May 2006 regarding the following "suspicious activity" at the pawn shop: After the store had closed, which on that day was a little earlier than 6:00 p.m., Walker saw "[Defendant] pulling on the door [of Pawn Mart] with . . . [t]wo black bags in his hand." Walker "knew [and recognized Defendant] from the neighborhood." Several days after Walker reported the incident at Pawn Mart to the police, a detective contacted Walker and asked her to identify a suspect in several photographs. Walker identified the person in the photographs as Defendant. At trial, Walker again identified Defendant in several photographs[2] taken from the surveillance video at Cash America Pawn during the perpetration of the robbery on 27 May 2006.

---

[1] The Court of Appeals opinion noted that Lattimore could not identify the alleged perpetrators in a photo array, explaining that he never had a good look at them, but the court noted that Petitioner was captured in surveillance footage during the robbery that showed him in both the vault and the manager's office.

[2] In its opinion, the court observed that Walker identified Petitioner in five different State's exhibits.

> Detective Kenneth Ball also testified at trial, stating that Walker told him "she had recognized some subjects in a white Lincoln Town Car that seemed to be casing the Pawn Mart on North Tryon Street where she worked and that she knew both of the subjects." One of the men, Walker said, was Defendant. According to Detective Ball, Walker further stated that "[t]hey came up to the store twice on different days pulling on the door after hours[,] [and] [o]ne time they actually displayed firearms." Detective Ball showed Walker "copies of the surveillance footage" from the robbery at Cash America Pawn, and "she immediately recognized the person in the photos as [Defendant]."
>
> After Detective Ball obtained a warrant for Defendant's arrest, but before Defendant's actual arrest, Detective Ball "submitted [Defendant] to Charlotte's Ten Most Wanted List" and "to the North Carolina's Most Wanted List." The "Ten Most Wanted List submission that [Detective Ball] filled out on [Defendant]" was admitted, without objection, as evidence at trial and was published to the jury.
>
> Defendant did not testify, nor did he put on any evidence in this case.

State v. Davis, 213 N.C. App. 714, 2011 WL 2848775, at *1-3 (N.C. Ct. App.) (unpublished table decision), disc. rev. denied, 365 N.C. 360 (N.C. 2011).

On February 14, 2012, Petitioner filed a pro se motion for appropriate relief (MAR) in Mecklenburg County Superior Court and raised several grounds for relief: (1) that the evidence presented at trial was insufficient to support his charges; (2) that his sentence was erroneously imposed; (3) the trial court erred in its jury instructions regarding fingerprint evidence; (4) the trial court committed error in admitting the Ten Most Wanted List poster into evidence; and he also raised several claims of ineffective assistance of counsel. The superior court rejected each one his claims and Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals. Petitioner renewed his challenge to the sufficiency of the evidence; to the trial court's jury instructions regarding fingerprint evidence and to the competency of the fingerprint

4

evidence; and to the legality of his sentence. Petitioner also presented claims for ineffective of assistance of counsel that were not presented in his MAR and those claims were dismissed without prejudice. The court of appeals denied his petition for a writ of certiorari on the claims which had been rejected by the superior court in his MAR. State v. Davis, No. P12-832 (N.C. Ct. App. Oct. 8, 2012).

This federal habeas petition follows. The Respondent has filed a motion for summary judgment and Petitioner was notified of his right to file a response, (Doc. No. 8: Roseboro Order), and he has responded by filing an affidavit. (Doc. No. 9). This matter is now ready for disposition.

## II.   STANDARD OF REVIEW

### A.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### B.   Section 2254 Standard

In addition to the summary judgment standard set forth above, this Court must also consider the requirements set forth in 28 U.S.C. § 2254, which provides in relevant part, that an

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree. . ." Young v. Catoe, 205 F.3d 750, 755 n.2 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court's adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

## III. DISCUSSION

### A. Ground One

Petitioner first contends that the admission of the Ten Most Wanted List poster into evidence deprived him of his right to a fair and impartial trial. (3:13-cv-42, Doc. No. 1 at 5). This poster was offered into evidence by the State after Detective Ball identified the document and the trial court admitted the poster without objection. Petitioner does not identify what federal constitutional right he contends has been violated rather he generically appears to contend that there was some inherent prejudice in the poster's admission.

The trial court's admission of this evidence does not rise to the level of a cognizable federal habeas claim because the evidence of Petitioner's guilt, as summarized by the court of appeals and as presented in the trial transcript, was overwhelming. See (Doc. Nos. 10 and 11: Tr. Transcripts). Thus, Petitioner has failed to demonstrate that the admission of this evidence was so prejudicial such that his right to due process was violated. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). For these reasons, this claim for relief will be denied.

### B. Ground Two

Next, Petitioner presents the following claim of trial court error:

> Trial court erred in allowing fingerprint to be entered into trial as evidence where [ ] examiner failed to prove that the finger print match petitioner . . . trial court erred in allowing fingerprint evidence to be presented at trial and published to the jury, where the (AFIS) Automated Fingerprint Indentification [sic] computer analysis did not confirm a positive match of the petitioner's latent print allegedly found at the crime scene, and the (AFIS) is not permissible [sic] evidence to be allowed upon in court of law as being any actual/accurate evidence, which should not have been (published to the jury at trial)

(Doc. No. 1 at 6-7).

This claim will be denied for three reasons.

First, Petitioner is challenging the admissibility of evidence at trial which is a uniquely a matter of state law and not cognizable on federal habeas review unless Petitioner can demonstrate that the admission of the challenged evidence resulted in a complete deprivation of due process under federal law. See Estelle, 502 U.S. at 71-72. Again, Petitioner offers no argument that can demonstrate such a federal constitutional violation occurred because there was substantial evidence offered by the State at trial that the fingerprints which were lifted from Lattimore's vehicle on the day of the robbery belonged to Petitioner. Davis, 2011 WL 2848775, at *2.

Second, Petitioner offers nothing short of a conclusory paragraph in support of this assertion, and Petitioner, who maintains the burden in a federal habeas proceeding, cannot rely on conclusory allegations in a quest for relief. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance of counsel claim –or, for that matter, on any claim—a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), overruled on other grounds by Gray v. Netherland, 518 U.S. 152, 165-66 (1996).

Finally, Petitioner has procedurally defaulted this claim. On direct appeal Petitioner limited his challenge to the fingerprint evidence to the question of whether the jury should have received an instruction that the probative force of the fingerprint evidence is lacking unless the State can prove that the fingerprints were left contemporaneously with the commission of the crime. Davis, 2011 WL 2848775, at *3. This argument was rejected by the court of appeals.

In Petitioner's MAR, he attempted to raise this new challenge to the fingerprint evidence

8

and the State court rejected the claim after concluding that the issue could have been raised on direct appeal, but because he failed to so, the claim was procedurally defaulted. "A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Walker v. Martin, 131 S.Ct. 1120, 1127 (2011) (internal citation omitted). North Carolina has implemented a procedural bar with respect to claims that may be entertained in a collateral proceeding. See N.C. Gen. Stat. §§ 15A-1419(a)(3) (barred if defendant was in an adequate position to raise the claim on direct appeal but failed to do so) & (b) (claim shall be barred when defendant was in a position to raise it in a direct appeal but did not do so, unless the defendant can show cause and prejudice or a fundamental miscarriage of justice, i.e., "actual innocence"). See Rose v. Lee, 252 F.3d 676 (4th Cir. 2001) (the application of the post-conviction bar on procedurally defaulted claims is mandatory). Petitioner has offered no evidence or argument that he should escape the application for the procedural bar in this instance.

For the foregoing reasons, the Court finds that this second claim should be denied.

C. Ground Three

In this third ground for relief, Petitioner presents a number of claims of ineffective assistance of counsel.

1. Trial counsel was a civil law attorney with no knowledge of criminal law;
2. Trial counsel failed to object during trial;
3. Trial counsel failed to move for a mistrial when the Ten Most Wanted List poster was published to the jury;

9

4. Trial counsel was ineffective in failing to file a pretrial motion to suppress or any pretrial motions at all;

5. Trial counsel conducted no investigation of Petitioner's case prior to trial;

6. Trial counsel failed to filed a motion to withdraw as counsel despite Petitioner's request that he do so based on a conflict of interest; and, apparently;

7. Appellate counsel was ineffective in failing to raise claims of ineffective assistance of trial counsel on direct appeal.

(Doc. No. 1 at 8).

Petitioner bears the burden of demonstrating that his counsel was both deficient and that the deficient performance caused him prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Petitioner's unsupported claims of ineffective assistance of counsel in Claims 1, 2, 4, 5, 6 and 7 will be dismissed as conclusory and it bears repeating:

> In order to obtain an evidentiary hearing on an ineffective assistance of counsel claim –or, for that matter, on any claim—a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.   .

<u>See</u> <u>Nickerson</u>, 971 F.2d at 1136.

In sum, Petitioner has simply offered a string of one-line complaints that he contends show deficient performance by his counsel but he offers no documentary support for these assertions nor has he demonstrated that "but for counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different. A reasonability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. Furthermore, even if Petitioner had made the effort to present some substantive argument supporting a right to relief under

Strickland, he cannot demonstrate, and a review of the evidence so confirms, that his counsel's performance rendered his trial or appeal "fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 US. 364, 369 (1993). These claims for relief will be denied as conclusory.

In his third claim of ineffective assistance of counsel, Petitioner again challenges the admission of the Ten Most Wanted List poster into evidence. The court of appeals rejected a challenge that the trial court erred in admitting the poster in the evidence, concluding that "we do not believe that absent the admission of the Ten Most Wanted List, the jury would probably have reached a different verdict." Davis, 2011 WL 2848775, at *5-6.

The Court finds that in the guise of an ineffective assistance of counsel claim, the failure to object to the admission of the poster into evidence cannot demonstrate a right to relief under Strickland because, again, Petitioner cannot demonstrate how the admission prejudiced him. This is true, particularly because of the other substantial evidence that the State presented which the jury found was sufficient to establish his identity as the perpetrator of the robbery beyond a reasonable doubt: his fingerprints were lifted at the scene immediately after the robbery, multiple in-court identifications by Ms. Walker, and the surveillance footage.

D. Ground Four

In his last claim for relief, Petitioner argues that the trial court erred when it refused to allow the jury to view the videotape footage of the robbery at Cash America Pawn. Petitioner contends that this refusal prejudiced him because if the jury had been allowed to view the videotape again during deliberations then "they could have made a determination of the identification of the person who robbed the place of business . . ." (Doc. No. 1 at 10). Petitioner explains that this argument is "newly discovered evidence" and appears to contend that

reviewing the tape would have changed the outcome because the jury would have concluded that he was not the perpetrator of the robbery.

Petitioner again challenges the evidentiary ruling of the superior court which is a matter of state law, and not cognizable on federal habeas review unless Petitioner can demonstrate that his federal due process rights were violated. The jury was allowed to view portions of the videotape during trial and Jawquetta Walker, the employee from Pawn Mart, testified that she knew and recognized Petitioner when interviewed by Detective Ball after the robbery. Additionally, Ms. Walker positively identified Petitioner in court as the person depicted on the videotape during the robbery at Cash America Pawn. In fact, Ms. Walker identified Petitioner in several photographs that were taken from the surveillance footage on the day of the robbery. For these reasons, the Court finds that Petitioner cannot demonstrate a claim to relief as it is clear that there was substantial evidence to establish Petitioner as the perpetrator of the robbery of the Cash America Pawn.

Second, for the same reasons articulated above, Petitioner has procedurally defaulted this claim because he did not raise this claim on direct appeal and he cannot demonstrate, in particular because of the substantial evidence of his identity as one of the perpetrators of the robbery, that he suffered actual prejudice or that a fundamental miscarriage of justice would occur.

For the foregoing reasons, this claim for relief will be denied.

## IV. CONCLUSION

The Court finds that Petitioner has failed to present any meritorious claims for relief and Respondent's motion for summary judgment will be therefore be granted.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's motion for summary judgment is **GRANTED**. (Doc. No. 6).

2. Petitioner's petition for habeas corpus will be **DENIED** and **DISMISSED**. (Doc. No. 1).

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 8, 2014

_____
Robert J. Conrad, Jr.
United States District Judge